UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1) MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED,<br><br>  Plaintiff,<br><br>vs.<br><br>1) BEN ESTES, JR.,<br><br>  Defendant. | Case No. CIV-18-56-M |

**COMPLAINT FOR INJUNCTIVE**
**AND DECLARATORY RELIEF**

Plaintiff Merrill Lynch, Pierce, Fenner & Smith Incorporated ("MLPF&S") hereby alleges as follows in support of its claim for relief against Defendant Ben Estes, Jr. ("Estes").

**NATURE OF THE ACTION**

1. This is an action to enjoin proceedings in a FINRA arbitration (the "FINRA Arbitration") that Defendant has recently initiated in Oklahoma City, Oklahoma against MLPF&S. In Defendant's FINRA Statement of Claim (Ex. 1), Defendant asserts an untimely fraud claim seeking recovery for the alleged decline in the value of his Merrill, Lynch & Co., Inc., ("ML & Co.") stock holdings.[1] ML & Co.—not MLPF&S—issued

---

[1] Defendant's FINRA Statement of Claim (without voluminous attachments, consisting of public records) is attached as Exhibit 1 to this Complaint. In addition to this FINRA claim, Defendant's counsel has filed, to date, twenty-two other FINRA claims against MLPF&S across the country making identical allegations. None of these claims are appropriate for FINRA arbitration. MLPF&S intends to seek to enjoin all such inappropriately filed FINRA claims. MLPF&S reserves all rights arising under any class action settlement agreements pertaining to classes as to which any Defendant or predecessor-in-interest was a member, or other agreements as to which any Defendant or predecessor-in-interest was a party. MLPF&S further reserves all rights, arguments, and

the stock that Defendant claims declined in value. As described below, Defendant asserts that various alleged misrepresentations and omissions by ML & Co. resulted in the decline in the stock's value. Defendant does not make any allegation against MLPF&S relating to its role as broker-dealer (or as his employer), let alone assert that MLPF&S's acts as broker-dealer (or employer) caused his loss. This claim does not belong in arbitration at all, let alone in an arbitration against MLPF&S.

2.  In the arbitration statement of claim, Defendant asserts that he was injured as a result of ML & Co.'s failure to disclose its alleged risks and activities related to subprime mortgage originations and subprime mortgage-related securities prior to 2008. Defendant asserts that ML & Co.'s concealment of "billions of dollars of fraudulent mortgages, fraudulent RMBS, and fraudulent CDOs" (two types of mortgage-related securities) caused the Defendant to hold onto ML & Co. stock and suffer injury when the stock's value declined.

3.  Defendant alleges that he was injured by the decline in value of his ML & Co. stock holdings. Defendant also cites ML & Co.'s conduct and public statements of ML & Co. management—including its CEO and CFO—as the cause of those injuries. Defendant does not, however, name ML & Co. as a respondent in his FINRA Arbitration claim. ML & Co. was not, and has never been, a FINRA member. To bring an action against ML & Co., Defendant would have to file suit in court. MLPF&S, by contrast, *is* a FINRA member—but it did not engage in the conduct that Defendant cites as causing his injuries. Nevertheless, MLPF&S now finds itself named as the respondent in the Defendant's FINRA Arbitration claim.

4.  The reason Defendant has filed this claim against the wrong party (MLPF&S) and in the wrong forum (FINRA) for alleged conduct unrelated to his customer or employment relationships with MLPF&S is obvious: Defendant's claim is

---

defenses, including with respect to jurisdiction and venue, in the event Defendant elects to dismiss his FINRA arbitration and file a claim in this or any other court.

time-barred under applicable statutes of limitation and contains obvious facial defects. Private securities class actions and other investor actions against ML & Co. made allegations similar to Defendant's *as early as 2007*. Indeed, the Southern District of New York and the Second Circuit have held that shareholders were on notice for statute of limitations purposes *no later than May 2009* of such claims against ML & Co.

5.  Defendant has brought his claim in FINRA arbitration to delay focus on the applicable statutes of limitations and other facial defects in his claim. If Defendant's claim was to proceed before FINRA, despite its obvious defects (namely, that the claim targets MLPF&S for ML & Co.'s alleged conduct, is untimely, and fails to state a claim), MLPF&S may not have the immediate ability to seek dismissal of claims in FINRA without participating in discovery and engaging in a full and unnecessarily wasteful hearing on the merits years into the arbitration.

6.  FINRA, however, is an improper forum for Defendant's claim. A claim against a FINRA member (such MLPF&S) is arbitrable before FINRA only if the claim is connected to the FINRA member's business activities. But Defendant's claim arises out of injuries that ML & Co.—not a FINRA member—allegedly caused to its shareholders through its alleged conduct and public statements over a decade ago. While Defendant allegedly held his ML & Co. stock holdings in MLPF&S brokerage accounts, Defendant's claim and alleged injuries do not arise out of any actions MLPF&S took as his broker or employer. Defendant's claim, therefore, is not arbitrable. His attempt to shoehorn untimely and meritless allegations regarding securitization practices into customer (or employer) FINRA arbitration claims against MLPF&S is improper.

7.  Under settled law, being forced to arbitrate a dispute MLPF&S has not agreed to arbitrate under FINRA rules constitutes irreparable harm entitling MLPF&S to an injunction from the Court.

8.  The Court should enjoin the pending arbitration initiated by Defendant and declare that Defendant's claim is not subject to arbitration.

## THE PARTIES

9. Plaintiff MLPF&S is a Delaware corporation with its principal place of business in New York, New York.

10. Defendant Ben Estes, Jr. is a citizen of the state of Oklahoma. On information and belief, he resides in Tulsa, Oklahoma.

11. Non-Party ML & Co. was, until 2008, a publicly traded company listed on the New York Stock Exchange under the ticker symbol "MER." ML & Co. was acquired by Bank of America Corporation ("BAC") in a merger that was consummated on January 1, 2009.[2] Prior to the merger of ML & Co. into BAC, MLPF&S was a wholly owned subsidiary of ML & Co. At all relevant times, ML & Co. and MLPF&S were separate corporate entities. ML & Co., unlike MLPF&S, was not a FINRA member. In October 2013, over four years after it was acquired, ML & Co. was merged into BAC and ceased to exist as a separate corporate entity. BAC is not a FINRA member either.

## JURISDICTION AND VENUE

12. This is an action for a declaratory judgment pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57 and for injunctive relief pursuant to Federal Rule of Civil Procedure 65(a).

13. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are of diverse citizenship and the amount in controversy exceeds $75,000. In his arbitration claim, Defendant seeks damages in excess of $3 million.

14. This Court also has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331. MLPF&S's request for a declaratory judgment and an injunction presents

---

[2] Upon ML & Co.'s merger with Bank of America, ML & Co. stock ceased to trade publicly, and ML & Co. shareholders received BAC common stock in exchange for their ML & Co. common stock. For ease of reference, the Complaint refers to Defendant's at-issue stock holdings both before and after the merger as "ML & Co. stock holdings."

4

questions of federal law because Defendant's FINRA Arbitration statement of claim includes a claim under the Racketeer Influenced and Corrupt Organizations Act (RICO).

15.     This Court has personal jurisdiction over Defendant. Defendant Ben Estes, Jr. resides in Oklahoma.

16.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events giving rise to this action occurred within this judicial district, including that the FINRA Arbitration that MLPF&S seeks to enjoin has been set to take place in Oklahoma City, Oklahoma at Defendant's request.

## LEGAL AND FACTUAL BACKGROUND

### Shareholder and Investor Actions Against ML & Co. Filed in 2007 and 2008 Anticipate Defendant's Claim By a Decade

17.     Shareholder actions brought by ML & Co. shareholders against ML & Co. in 2007 and 2008 made the same allegations that Defendant rehashes in his untimely FINRA claim.

18.     As the Southern District of New York has explained, ML & Co. shareholders' class actions filed in 2007 and 2008 "against Merrill Lynch claim[ed] the institution had also misrepresented its own exposure to CDOs and other subprime assets," *Woori Bank v. Merrill Lynch*, 923 F. Supp. 2d 491, 497 (S.D.N.Y.), *aff'd*, 542 F. App'x 81 (2d Cir. 2013). These actions alleged that ML & Co. shareholders were injured because ML & Co.'s stock declined once the market learned about ML & Co.'s exposure to subprime mortgages and related securities. The complaints in the pre-2009 shareholder actions also alleged "systemic deficiencies in both Merrill Lynch's underwriting disclosures and the ratings of these investment products provided by the ratings agencies" and claimed that "Merrill Lynch failed to disclose or misrepresented the disjunct between the alleged underwriting standards and the actual quality of the underlying mortgages" to shareholders. *Id.* These are core factual allegations that Defendant makes in his arbitration statement of claim.

19. Indeed, the pre-2009 ML & Co. shareholder lawsuits also cover the specific details in Defendant's FINRA statement of claim—further confirming that Defendant's claim duplicates decade-old allegations. The complaints in shareholder actions initiated starting in 2007 alleged that ML & Co. failed to disclose the risks associated with ML & Co.'s exposure to various mortgage originators and securitizers such as Ownit and First Franklin, and further alleged false statements by ML & Co. executives. *See, e.g.*, *In re Merrill Lynch & Co., Inc. Securities, Derivative, & ERISA Litig.*, No. 07-cv-9633, ECF No. 43 (S.D.N.Y. May 5, 2008) (Consolidated Amended Class Action Complaint); ECF No. 109 (S.D.N.Y. Sept. 23, 2008) (Consolidated Supplemental Complaint for Violations of the Employee Retirement Income Security Act). Defendant's FINRA claim makes substantially the same allegations.

20. In addition to ML & Co. shareholder actions, investors in other securities (including in residential mortgage-backed securities ("RMBS") and collateralized debt obligations ("CDOs")) that allegedly were exposed to the subprime mortgage market made the same allegations regarding ML & Co.'s alleged conduct. As the Southern District of New York explained, in 2008 and 2009, investors filed "many more lawsuits . . . against Merrill Lynch specifically alleging that Merrill Lynch made misrepresentations regarding mortgage underwriting standards thereby significantly understating the risk of various investments." *Woori*, 923 F. Supp. 2d at 496.

**Courts Hold That Investors Were on Notice of Fraud and Misrepresentation Claims Against Merrill Lynch Related to Mortgage Originations and Mortgage-Related Securities No Later Than May 2009**

21. Unsurprisingly, in light of these many actions filed in 2007 and 2008, the Second Circuit and Southern District of New York have held that by May 2009, investors were on notice of and had the practical ability to bring fraud claims alleging misrepresentations regarding mortgages and mortgage-securities originated or securitized by ML & Co. *Woori*, 923 F. Supp. 2d at 496 ("Between early 2007 and May 2009,

6

problems with mortgage standards and CDO ratings were reported extensively by the media and served as the basis for multiple government investigations and individual lawsuits. … [T]hese sources . . . exposed specific facts regarding Merrill Lynch that [Plaintiff] currently employs to substantiate its fraud claims."); *Woori Bank v. Merrill Lynch*, 542 F. App'x 81, 82 (2d Cir. 2013) ("[t]he district court carefully analyzed [plaintiff's] claims and correctly concluded that the overall publicity surrounding Merrill Lynch's CDOs, the lawsuits filed against Merrill Lynch relating to the CDOs, and the government investigations into Merrill Lynch's activities were sufficient to make [the plaintiff] 'actually and specifically recognize[ ]' this claim for damages").

22. It is now some ten years after the first shareholder action was filed in 2007 against ML & Co. alleging shareholder losses arising from ML & Co.'s subprime mortgage exposure during the mortgage crisis, and some eight years after the date by which courts have definitively ruled that the limitations periods on claims against ML & Co. began to run. To say that Defendant's claim is stale is an understatement. It is petrified, and, if litigated in court, would be subject to immediate dismissal at the pleading stage.

### The Billington Arbitration and Copycat FINRA Claims—Including Claim By Estes—Subsequently Filed by Billington's Attorney

23. On June 23, 2017, Defendant's counsel filed a Statement of Claim in FINRA arbitration ("Initial Statement of Claim") on behalf of Christina Billington ("Billington") as Successor Trustee for the James A. Billington Trust ("Billington Trust").

24. Billington's Initial Statement of Claim focused entirely on the conduct of ML & Co. In the Initial Statement of Claim, Billington asserted that "Merrill Lynch" had misstated its exposure to risky mortgages during the housing bubble, causing the value of the Billington Trust's ML & Co. stock holdings to decline once the full extent of ML & Co.'s exposure to subprime mortgages allegedly became known.

25. On June 28, 2017, Billington's attorney followed up with a letter attaching the Initial Statement of Claim. In the June 28 letter (Ex. 2), Billington's counsel alleged that James Billington, the former trustee of the Billington Trust, "was misled by Merrill Lynch, Stanley O'Neal, John Thain, and others on investor conference calls regarding the financial health of the firm. As the victim of these false statements he lost over $100 million on his MER shares." Messrs. O'Neal and Thain were former CEOs of ML & Co.—the publicly traded company— and any "investor conference calls" they would have spoken on were ML & Co. calls.

26. Billington named "Merrill Lynch, Inc." as the respondent in the Initial Statement of Claim. There is no such corporate entity. In subsequent correspondence, Billington's counsel confirmed that he had actually intended to name ML & Co. as the respondent. Moreover, on or around July 26, 2017, Billington entered into a tolling agreement relating to the claims raised in the FINRA arbitration in which Billington agreed that ML & Co. had been "incorrectly identified in the [arbitration] as Merrill Lynch, Inc.," confirming that Billington's claims targeted alleged conduct by ML & Co. The tolling agreement pertained only to claims against ML & Co., not MLPF&S. ML & Co., as noted above, is not a FINRA member.

27. On information and belief, after filing Billington's Initial Statement of Claim, Billington's counsel used the filed claim to line up more potential claimants, including by making targeted solicitations to former Merrill employees who may have held ML & Co. stock.

28. On September 21, 2017, Billington filed an Amended Statement of Claim ("Amended Statement of Claim") (Ex. 3).[3] The Amended Statement of Claim substituted MLPF&S, a FINRA member, as the sole respondent.

---

[3] As with Defendant's Statement of Claim, the Billington Amended Statement of Claim is attached as Exhibit 3 without its voluminous public records attachments.

29.     Around that time, Billington's counsel also filed copycat FINRA arbitration claims across the country on behalf of twenty-two other claimants, including Defendant. The particular factual allegations in those copycat FINRA claims are virtually identical to those in Billington's Amended Statement of Claim.

30.     Among these twenty-two copycat claims, Defendant Estes filed a Statement of Claim dated November 22, 2017, seeking to initiate a FINRA arbitration in the location closest to Tulsa, Oklahoma. As with Billington, Defendant Estes asserts that as a result of ML & Co.'s alleged fraud, Defendant's ML & Co. stock holdings suffered losses.

31.     Defendant's claim, like the other twenty-two claims filed by Defendant's counsel, alleges that ML & Co. and its senior leadership misled shareholders by failing to disclose the extent of ML & Co.'s exposure to ostensibly risky subprime mortgages, RMBS, and CDOs prior to 2008, and that the claimants were injured by the decline in value of the claimants' ML & Co. stock holdings when details about ML & Co.'s risks emerged.  Although the Statement of Claim names MLPF&S as respondent, its substantive allegations are virtually identical to those made in Billington's Initial Statement of Claim (which, as noted, were directed at ML & Co. and Billington's counsel admitted were directed at ML & Co.).

32.     Just like Billington, Estes's Statement of Claim focuses on the activities of ML & Co. and places the blame for the decline of Defendant's ML & Co. stock holdings on ML & Co. conduct and statements. The Statement of Claim alleges that "Merrill Lynch and its top officers committed fraud upon the public, including [Defendant], by concealing the billions of dollars in fraudulent mortgages, fraudulent RMBS, and fraudulent CDOs" and this alleged fraud "devastated the firm and shareholders, including [Defendant]."  It cites statements and actions by former ML & Co. executives and employees—including ML & Co.'s former CEOs Stanley O'Neal and John Thain, and its former CFO Jeffrey Edwards—as constituting the alleged fraud.  As noted above, the

allegations in the Statement of Claim mirror allegations in shareholder and other investor actions against ML & Co. dating back to 2007.

33. Defendant's Statement of Claim asserts claims for fraud, breach of fiduciary duty, and violation of RICO. Estes seeks compensatory damages of $3 million, punitive damages, and treble damages under RICO.

### Defendant's Claim Against MLPF&S Is Not Arbitrable

34. The reason Defendant has not brought his claim in court against ML & Co. is obvious. Claims by ML & Co. shareholders are long since time-barred. As described above, ML & Co. shareholders filed substantially similar claims in 2007 and 2008, and the Southern District of New York, in a decision affirmed by the Second Circuit, found that the facts underlying Defendant's claim were sufficiently well known by no later than May 2009 to put investors on notice of such claims against ML & Co. Given that Defendant's claim rehashes the allegations in the shareholder complaints from 2007 and 2008, the limitations periods on Defendant's claim, if anything, began to run *before* May 2009. What's more, a review of Defendant's legal claim shows that it lacks merit and would be subject to threshold dismissal if filed in court because Defendant fails to plausibly allege fraud, breach of fiduciary duty, or violations of RICO, against anyone.

35. The reason Defendant has brought this claim against MLPF&S is also obvious: MLPF&S is a FINRA member, while ML & Co. is not. But the mere fact that MLPF&S is a FINRA member does not make Defendant's claim arbitrable.

36. A dispute with a FINRA member is arbitrable only if, among other things, the dispute "arises in connection with the business activities of the [FINRA] member." *See* FINRA Rule 12200; *see also* FINRA Rule 13200. For a dispute to arise in connection with the business activities of the member, the asserted injury must be caused by the conduct of the FINRA member.

37.     Defendant does not, and cannot, assert that he suffered any injury arising from the business activities of his broker (or employer) MLPF&S.  Although Defendant held his ML & Co. stock holdings in an MLPF&S account, Defendant does not allege that MLPF&S's conduct as broker caused the decline in value of Defendant's ML & Co. holdings.  Nor could he—on information and belief, Defendant's brokerage account was a non-discretionary account, as to which a broker's duties to the investor are limited to diligence and competence in the execution of trade orders.  *See, e.g.*, *de Kwiatkowski v. Bear, Stearns & Co., Inc.*, 306 F.3d 1293, 1302 (2d Cir. 2002);  *Press v. Chem. Inv. Servs. Corp.*, 166 F.3d 529, 536 (2d Cir. 1999).  Further, Defendant alleges that ML & Co. shares and stock options were earned over the course of employment.  Unsurprisingly, then, the Statement of Claim makes no suggestion that any of Defendant's injuries arise from defective execution of trade orders.  Nor does Defendant allege that MLPF&S failed to give him shares or options that he earned pursuant to his employment.  Instead, he pursues a shareholder claim identical to those already pursued by the public.  MLPF&S, accordingly, is not a proper respondent for Defendant's claim and Defendant's' claim is not arbitrable.

### MLPF&S Will Suffer Irreparable Harm Without Injunctive Relief

38.     Unless Defendant is enjoined from pursuing his claim in FINRA arbitration, MLFP&S will suffer irreparable harm as a matter of law: it will be forced to arbitrate a dispute that is not subject to arbitration, because Defendant's claim arose not from MLPF&S's activities but from non-FINRA member ML & Co.'s activities.  *See Tiffany v. KO Huts, Inc.*, 178 F. Supp. 3d 1140, 1148–49 (W.D. Okla. 2016) ("If a court has concluded that a dispute is non-arbitrable, prior cases uniformly hold that the party urging arbitration may be enjoined from pursuing what would now be a futile arbitration, even if the threatened irreparable injury to the other party is only the cost of defending the arbitration and having the court set aside any unfavorable award.") (quoting

*McLaughlin Gormley King Co. v. Terminix Int'l Co., L.P.*, 105 F.3d 1192, 1194 (8th Cir. 1997)); *Monavie, LLC v. Quixtar, Inc.*, 741F. Supp. 2d 1227, 1241-42 (D. Utah 2009) ("[T]he injury to a party who is forced to submit to arbitration when it did not agree to do so constitutes *per se* irreparable harm[.]").

39. Furthermore, Defendant's claim in arbitration is time-barred by the applicable statutes of limitations—as explained above. Unlike in court proceedings, however, MLPF&S may not immediately seek dismissal on statute of limitations grounds of claims in FINRA without participating in discovery and engaging in a full (and unnecessarily wasteful) hearing on the merits. Unless the Court grants MLPF&S the relief it seeks, MLPF&S will be forced to expend resources it cannot recover in defending itself in arbitration where it otherwise would be entitled to an early dismissal if the matter were litigated in court. For this reason, too, it will be irreparably harmed unless the FINRA Arbitrations are enjoined.

## CLAIMS FOR RELIEF

### COUNT I

### Declaratory Judgment

40. MLPF&S alleges each and every prior allegation of this Complaint as if set forth fully herein.

41. MLPF&S is compelled to seek relief from the Court because it is well-settled law that a court may decide whether a dispute against a FINRA member is subject to arbitration under FINRA rules, including under FINRA Rule 12200.

42. Defendant's claim is not subject to FINRA arbitration because it does not arise out of the business activities of MLPF&S. Specifically, Defendant's alleged injury—the diminution in the value of his ML & Co. stock holdings—did not result from the conduct of Defendant's broker (or employer), MLPF&S. Rather, Defendant's alleged injuries were caused by conduct unrelated to his customer or employment relationships

with MLPF&S , including the alleged activities and public statements of non-FINRA member ML & Co.  Defendant cannot bring a claim seeking recovery for alleged ML & Co. conduct in FINRA arbitration proceedings against MLPF&S.  *See* FINRA Rule 12200.

43. As a matter of law, unless Defendant is enjoined from pursuing his claim in FINRA Arbitration, MLPF&S will suffer irreparable harm because it will (i) be forced to arbitrate a dispute that is not subject to arbitration under FINRA rules; and (ii) be forced to incur substantial time and expense defending itself in arbitration proceedings, or risk an adverse outcome in those proceedings, even though the claim is untimely and subject to threshold dismissal if litigated in court.  Being forced to arbitrate a dispute MLPF&S has not agreed to arbitrate under FINRA rules constitutes irreparable harm as a matter of law.

44. Declaratory relief from this Court will resolve this controversy.

45. As alleged above, a real, substantial, and immediate controversy is presented regarding the rights, duties, and liabilities of the parties.  Pursuant to 28 U.S.C. § 2201 *et seq.*, and Rule 57 of the Federal Rules of Civil Procedure, MLPF&S, accordingly, requests a declaratory judgment from the Court that Defendant's claim is not arbitrable and that Defendant must bring his claim, if at all, in court.

## COUNT II

### Injunctive Relief

46. MLPF&S alleges each and every prior allegation of this Complaint as if set forth fully herein.

47. Defendant has asserted a claim for compensatory, punitive, and treble damages in the FINRA Arbitration.  On information and belief, unless Defendant is enjoined, he will continue to pursue such claim.

48.     As a matter of law, unless Defendant is enjoined from pursuing his claim in FINRA Arbitration, MLPF&S will suffer irreparable harm because it will (i) be forced to arbitrate a dispute that is not subject to arbitration under FINRA rules; and (ii) be forced to incur substantial time and expense defending itself in arbitration proceedings, or risk an adverse outcome in those proceedings, even though the claim is untimely and subject to threshold dismissal if litigated in court.  Being forced to arbitrate a dispute MLPF&S has not agreed to arbitrate under FINRA rules constitutes irreparable harm as a matter of law.

49.     The balance of equities favors an injunction.

50.     The public interest would be served by enjoining Defendant from pursuing a time-barred and meritless claim against MLPF&S in arbitration, because such claim is not arbitrable, and because the claim would be subject to early threshold dismissal on limitations grounds if Defendant was to bring the claim in court.

## PRAYER FOR RELIEF

WHEREFORE, MLPF&S respectfully requests that this Court enter an order:

1.     Declaring that (a) FINRA is not the appropriate forum for Defendant Estes to pursue his claim; and (b) FINRA has no jurisdiction to adjudicate the FINRA Arbitration;

2.     Preliminarily and permanently enjoining Defendant Estes from pursuing his claim against MLPF&S in a FINRA Arbitration; and

3.     Awarding MLPF&S all other relief as may be just and proper, including attorneys' fees and costs.

By: */s/ Tara A. LaClair*
Tara A. LaClair, OBA #21903
Crowe & Dunlevy, P.C.
324 N. Robinson Ave., Ste. 100
Oklahoma City, OK 73034
Telephone:  (405) 235-7700
Facsimile:  (405) 272-5928
tara.laclair@crowedunlevy.com

Richard St. John (pro hac vice pending)
Jordan Navarrette (pro hac vice pending)
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071-3426
Telephone:	(213) 683-9100
Facsimile:	(213) 687-3702
richard.stjohn@mto.com
jordan.navarrette@mto.com

Achyut J. Phadke (pro hac vice pending)
560 Mission Street, 27th Floor
San Francisco, California 94105-2907
Telephone:	(415) 512-4000
Facsimile:	(415) 512-4077
achyut.phadke@mto.com

**Attorneys for Plaintiff Merrill, Lynch, Pierce, Fenner & Smith Incorporated**